UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 12-61599-CIV-WILLIAMS

LUZ MARINA ANSELMI,

    Plaintiff,

vs.

SHENDELL & ASSOCIATES, P.A.,

    Defendant.
_____/

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** is before the Court on Defendant's Motion to Dismiss (DE 10), to which Plaintiff filed a Response (DE 15), and Defendant filed a Reply (DE 19). On September 23, 2014, the Court entered an Order converting Defendant's Motion to Dismiss into a Motion for Summary Judgment and gave the parties 10 days to submit additional briefing and evidence in support or opposition to the merits. Defendant filed supplemental briefing on the Motion for Summary Judgment (DE 31, DE 32), and Plaintiff filed a Response in Opposition to the Motion for Summary Judgment (DE 33).

On October 28, 2014, the Court granted in part Defendant's Motion for Summary Judgment (DE 34). However, the Court permitted the parties to engage in limited discovery with respect to Plaintiff's claim that Defendant violated the Fair Debt Collection Practices Act ("FDCPA") by impermissibly attempting to collect $50.00 in administrative fees which, according to Plaintiff, was misleading and not expressly authorized by the agreement creating the debt. After engaging in limited discovery, both Plaintiff and Defendant submitted supplemental briefing regarding the $50.00 administrative fees (*see* DE 36 and DE 35, respectively).

1

## I. BACKGROUND

The facts of this case are well-known to the parties and set forth more fully in the Court's prior Order granting in part Defendant's Motion for Summary Judgment (DE 34). Plaintiff filed this Complaint against Defendant Shendell & Associates, P.A., alleging that Defendant, a debt collector, sought to collect from Plaintiff money owed to Plaintiff's condominium association, the Fairways at Bonaventure Condominium Association, Inc. ("Fairways") (DE 1 ¶ 13). On August 23, 2011, Defendant sent its initial collection letter to Plaintiff (DE 1 ¶¶ 15-17, Ex. A). Plaintiff alleges that the Collection Letter sought to collect improper amounts that were not due, specifically $50.00 in administrative fees (DE 1 ¶ 18). Plaintiff asserted a single count under the FDCPA alleging that Defendant failed to specify the amount of debt in its initial communication, misrepresented the amount of debt owed, and unfairly attempted to collect more than Plaintiff owed.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this standard, "[o]nly disputes over facts that might affect the outcome of the suit under the governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And any such dispute is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the Court considers the evidence in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other

materials . . . ." Fed. R. Civ. P. 56(c)(1)(A). The Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party, and must resolve all reasonable doubts about the facts in favor of the non-movant." *Rioux v. City of Atlanta*, 520 F.3d 1269, 1274 (11th Cir. 2008) (quotation marks and citations omitted). At the summary judgment stage, the Court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

Finally, "[s]ummary judgment for a defendant is appropriate when the plaintiff 'fails to make a sufficient showing to establish the existence of an element essential to [his] case, and on which [he] will bear the burden at trial.'" *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805-06 (1999) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Thus, "[i]f the non-movant . . . fails to adduce evidence which would be sufficient . . . to support a jury finding for the non-movant, summary judgment may be granted." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1370 (11th Cir. 1997) (citation omitted).

## III. ANALYSIS

Plaintiff contends that Defendant violated 15 U.S.C. §§ 1692e and 1692f by attempting to collect $50.00 in administrative fees which, according to Plaintiff, was misleading and not expressly authorized by the agreement creating the debt (DE 15 at 7-9; DE 33). Plaintiff does not dispute "the general proposition that Anslemi's condominium association had the right to recover from her its costs resulting from the collection of her delinquent maintenance assessments, along with attorneys' fees, interest, late fees, and insufficient fund charges" (DE 33 at 1). Rather, Plaintiff argues that Defendant has not identified any governing documents "which allowed it or the

3

condominium association to impose the $50 administrative fees" (DE 33 at 2). Plaintiff also argues that because the Collection Letter already listed costs in the amount of $6.03, the administrative fees "must be something else other than costs," and that viewed from the perspective of the least sophisticated consumer, "the listing of those $50 under a separate line entry would thus mislead such a consumer to conclude the contrary, *i.e.*, that they were **not** costs." (DE 33 at 2.) In response, Defendant contends that the $50.00 administrative fees consisted of "a $25.00 charge to send a ten day demand letter to Plaintiff and a $25.00 charge to send Plaintiff's account to Shendell for collections." (DE 35 at 2). Defendant argues that the management agreement between West Broward Community Management and Fairways specifically provided for the $50.00 charge and that the fees were permissible under Florida Statute § 718.116 (DE 35 at 2).

To prevail on a FDCPA claim, a plaintiff must prove that: (1) the plaintiff has been the object of collection activity arising from consumer debt; (2) the defendant is a debt collector as defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA. *Fuller v. Becker & Poliakoff, P.A.*, 192 F. Supp. 2d 1361, 1366 (M.D. Fla. 2002). The FDCPA prohibits a defendant from misrepresenting the amount of debt a Plaintiff owes and from attempting to collect more than the Plaintiff owes. Specifically, § 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," including a false representation as to the "character, amount, or legal status of any debt." 15 U.S.C. § 1692e. Likewise, § 1692f prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt," including the

4

collection of "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f.

The Court employs the "least sophisticated consumer" standard to evaluate whether a debt collector's communication violates the FDCPA. *See LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010). The least sophisticated consumer standard is an objective standard that prevents liability for bizarre or idiosyncratic interpretations of collection notices. *Id.* While "protecting naïve consumers," the standard presumes that a consumer possesses "a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Id.* (internal quotations omitted) (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2nd Cir. 1993)). The least sophisticated consumer "is neither irrational nor a dolt." *Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89, 95 (2d Cir. 2012).

### A.   The Condominium Documents

In Florida, condominiums are strictly creatures of statute. *Woodside Vill. Condo. Ass'n, Inc. v. Jahren*, 806 So. 2d 452, 455 (Fla. 2002). Chapter 718 of the Florida Statutes, known as the Condominium Act, gives statutory recognition to the condominium form of ownership and establishes a detailed scheme governing the operation of condominiums. *Id.* The condominium declaration, also known as the condominium's constitution, strictly governs the relationship between the condominium unit owners and the condominium association. *Id.* at 456. Accordingly, a condominium unit owner is on notice of the unique form of ownership she acquired when she purchased the condominium and its restrictions, and she is bound by the attendant

5

condominium documents. *Id.* at 461; *see also Grove Isle Ass'n, Inc. v. Grove Isle Associates, LLLP*, 137 So. 3d 1081, 1091 (Fla. 3d DCA 2014); *Flagler Fed. Sav. & Loan Ass'n of Miami v. Crestview Towers Condo. Ass'n, Inc.*, 595 So. 2d 198, 200 (Fla. 3d DCA 1992). With respect to condominium assessments and analogous fees, Courts within this Circuit have held that such charges constitute debts under the FDCPA. *See Williams v. Edelman*, 408 F. Supp. 2d 1261, 1267 (S.D. Fla. 2005) (collecting cases); *Wright v. Bush Ross, P.A.*, No. 8:07CV1885T23MAP, 2008 WL 190466, at *2 (M.D. Fla. Jan. 18, 2008) ("[F]ederal courts . . . consistently hold that condominium assessments and homeowners' association fees are 'debts' under the FDCPA.").

Here, the Fairways' condominium declaration, which Plaintiff is bound by, expressly provides:

> Assessments and installments that are unpaid over ten (10) days after due date may, at the direction of the board of directors, be subject to a late charge of Twenty-Five Dollars ($25.00) per month and/or bear interest at the rate of fifteen percent (15%) per annum from the due date until paid.
>
> The board of directors of the association may take such action as they deem necessary to collect assessments . . . The delinquent member shall pay *all costs*, including reasonable attorneys' fees, incident to the collection of such assessments.
>
> \* \* \*
>
> In the event that any owner or owners are in default in payment of any assessment or installment . . . such owner or owners of any condominium parcel shall be personally liable . . . for interest on such delinquent assessment or installment thereof as above provided, and *for all costs of collecting such assessment* or installment thereof and interest thereon, including a reasonable attorney's fee . . . .

(DE 32-4 at 31-33) (emphasis added). The declaration also provides that the condominium association has the power "to make and collect assessments" and to "enter into contracts with others . . . and in connection therewith to delegate the powers

6

and rights contained herein, including that of making and collecting assessments, perfecting liens for non-payment, etc." (DE 32-4 at 26.) In addition, "each unit owner . . . shall be bound by any management agreement in the event a management agreement is entered into by the association." (DE 32-4 at 26.)

The management agreement[1] between West Broward and Fairways – which pursuant to the condominium declaration, the association was entitled to enter into – provides that West Broward would maintain all accounts receivable and proceed with collection of delinquent accounts pursuant to the association's direction (DE 35-2 at 6). It further states that the "collection policy established and approved by the Board . . . will be strictly adhered to for delinquent accounts." (DE 35-2 at 6.) Finally, it provides that a "'10 day Notice of Intent to Lien' as well as a 'Notice to Attorney for Lien' are at an additional costs recoverable from the delinquent homeowner." (DE 35-2 at 6.)

### B. The $50.00 Administrative Fees Were Expressly Authorized

Courts have found that when an agreement provides that a debtor is responsible "all costs" incurred in connection with the collection of a debt, the agreement "is expansive" and "permits the recovery of all 'collection costs' without any restrictions or limitations." *Gathuru v. Credit Control Servs., Inc.*, 623 F. Supp. 2d 113, 118 (D. Mass. 2009). Because the term "all costs" is a "broad, inclusive term" it "necessarily encompasses any types of costs that reasonably fall within that category." *Id.* The agreement need not specifically mention the amount of the fee or how it is calculated to satisfy the FDCPA's "expressly authorized" requirement. *See id.* at 118-120. Rather,

---

[1] The management agreement provided to the Court appears to be for 2008-2009. Neither of the parties has provided the Court with a management agreement dated during the time period that the Collection Letter was sent. Nonetheless, the parties do not appear to dispute that the management agreement provided to the Court governs the relationship of Fairways, West Broward, and Plaintiff during the relevant time period.

7

the phrase "collection costs" is broad enough to encompass a percentage-based fee or a specific amount, assuming that the fee represents the costs incurred by the creditor in collecting the debt. See *id.* at 119-120. "The FDCPA does not require creditors to recite in the agreement every possible way a cost or fee could be determined on a collection." *Id.* at 120. If the agreement expressly provides that a fee or costs may be imposed on the debtor, the imposition of a specific fee or cost will not violate the FDCPA. *Id.*; see also *Clark v. Main St. Acquisition Corp.*, 553 F. App'x 510 (6th Cir. 2014) (even if the term "costs" was unclear, the use of the term "costs" was not deceptive or misleading and therefore when agreement expressly authorized "other collection costs," a request for such costs did not violate the FDCPA).

Plaintiff argues that Defendant has not identified any governing documents "which allowed it or the condominium association to impose the $50 administrative fees" (DE 33 at 2). The undisputed evidence, however, shows that the $50.00 administrative fees imposed by Defendant were both expressly authorized by the agreement creating the debt and permitted by law. Under the Florida Condominium Act, a condominium association is permitted to collect costs incurred during the course of collecting on a delinquent account. See Fla. Stat. § 718.116(3) ("Any payment received by an association must be applied first to any interest accrued by the association, then to any administrative late fee, *then to any costs* and reasonable attorney's fees incurred in collection, and then to the delinquent assessment.") (emphasis added). In addition, the condominium declaration provides that a delinquent owner shall pay "all costs" incident to the collection of delinquent assessments or installments (DE 32-4 at 31-33). Plaintiff also agreed to be bound by any management agreement entered into by the

8

association (DE 32-4 at 26). Here, Fairways and West Broward entered into a management agreement which provided that a "'10 day Notice of Intent to Lien' as well as a 'Notice to Attorney for Lien' are at an additional costs recoverable from the delinquent homeowner." (DE 35-2 at 6). Accordingly, the Court finds, based upon the condominium declaration and the management agreement that the $50.00 administrative fees were amounts permitted by law and expressly authorized by the agreement creating the debt.

While the Court's decision is based upon a review of Florida law and the agreements establishing the debt, the Court notes that the testimony of Ms. Metz, who testified on West Broward's behalf, supports this finding. Ms. Metz testified that the $50 in administrative fees were provided for by the management agreement in effect between Fairways and West Broward during the time the disputed letter was sent (DE 35-1, Deposition of Lois Metz, 16:18-17:3). Specifically, she testified that the $50 in administrative fees consisted of a $25 charge to send a 10 day demand letter to Plaintiff and a $25 charge to send Plaintiff's account to Defendant for collection (Metz Dep. 16:17-25; 22:7-10; 26:17-25). Ms. Metz stated that the first $25 fee accounted for the time and effort of researching the account, creating a demand letter, posting on the account, and sending the demand letter to Plaintiff, (Metz Dep. 31:2-6; 39:1-12), and that the other $25 charge represented the property management company's time for assembling and printing out Plaintiff's account history, sending a letter to the association's attorney, and turning over the account to collections (Metz Dep. 31:15-32:2; 38:19-24; 41:2-10).[2]

---

[2] The Court also reviewed the testimony of Ms. Ms. Patricia LeMarier, a current member of the Fairways' board, who testified that she "never saw" the management agreement between

9

Consequently, for the reasons set forth above, the Court finds that the Collection Letter did not violate § 1692f of the FDCPA.[3]

### C. Attempting to Collect the $50.00 Administrative Fee Was Not Misleading

Plaintiff also argues that because the collection letter "explicitly listed 'Costs' at $6.03" it "follows that the $50 administrative fees must be something else other than costs – otherwise why didn't Shendell lists costs as $56.03?" (DE 33 at 2). Plaintiff contends that viewed from the perspective of the least sophisticated consumer, "the listing of those $50 under a separate line entry would thus mislead such a consumer to conclude the contrary, *i.e.*, that they were **not** costs." (DE 33 at 2) (emphasis in original).[4]

---

Fairways and West Broward and was not familiar with any of its terms because she was not on the board in 2011, when the disputed letter was sent (DE 35-4, Deposition of Patricia LeMarier, 38:4-11). Although Plaintiff relies on Ms. LeMarier's testimony to argue that the fees were impermissible because Ms. LeMarier testified that she believed the administrative fees "were tacked on by Shendell, which kept those fees," (DE 36 at 2), the Court notes that Ms. LeMarier testified that she had absolutely no basis or personal knowledge to justify that belief and that "it was just [her] opinion." (LeMarier Dep. 39:21-40:3; 21-22).

[3] As this Court previously advised Plaintiff, courts have not permitted claims to go forward under § 1692f if the claim does not identify any misconduct beyond that which plaintiff asserts violated other provisions of the FDCPA. *See Thomas v. Loomis-Therrien*, 5:14-CV-00979-CAS, 2014 WL 5335913 (C.D. Cal. Oct. 20, 2014); *Lautman v. 2800 Coyle St. Owners Corp.*, 14-CV-1868 ARR VVP, 2014 WL 4843947, at *12 (E.D.N.Y. Sept. 26, 2014) ("Section 1692f was enacted specifically to catch conduct not otherwise covered by FDCPA."); *Miljkovic v. Shafritz & Dinkin, P.A.*, No. 8-14-CV-635-T-33TBM, 2014 WL 3587550, at *8 (M.D. Fla. July 18, 2014) ("A complaint will be deemed deficient under § 1692f, however, if it does not identify any misconduct beyond that which Plaintiffs assert violate other provisions of the FDCPA."). Because the $50.00 administrative fees were expressly authorized by the agreement creating the debt and because Plaintiff has not identified any misconduct under § 1692f that is distinct from Plaintiff's § 1692e claim, Plaintiff's § 1692f must be dismissed with prejudice.

[4] The Court notes that Plaintiff, in her oppositions to the motion for summary judgment (DE 33, 36), does not cite to a single authority in support of her arguments. "In the future, all parties should thoroughly research and develop their arguments. The premise of our adversarial system is that . . . courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them. When parties do not fully develop their arguments and support them with citation to legal

10

Courts throughout the country have held that only material misrepresentations constitute a violation of the FDCPA. See e.g., *Miljkovic v. Shafritz & Dinkin, P.A.*, No. 8-14-CV-635-T-33TBM, 2014 WL 3587550, at *8 (M.D. Fla. July 18, 2014) ("[T]o state a § 1692e claim, the plaintiff must allege that the conduct was materially misleading"); *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010) (concluding that false but non-material representations are not likely to mislead the least sophisticated consumer and therefore are not actionable under §§ 1692e or 1692f); *Hahn v. Triumph P'ships, LLC*, 557 F.3d 755, 758 (7th Cir. 2009) ("[A] statement cannot mislead unless it is material, so a false but nonmaterial statement is not actionable" under the FDCPA); *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645-46 (7th Cir. 2009) ("If a statement would not mislead the unsophisticated consumer, it does not violate the FDCPA even if it is false in some technical sense."); *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 596 (6th Cir. 2009) (concluding that a false but non-material statement is not actionable under § 1692e); *Stanley v. Ideal Collection Servs., Inc.*, No. 13-60217-CIV, 2013 WL 4496501, at *3 (S.D. Fla. Aug. 20, 2013); *Maynard v. Cannon*, 401 F. App'x 389, 397 (10th Cir. 2010) (stating the "FDCPA does not result in liability for every statement later alleged to be inaccurate, no matter how small or ultimately harmless."); *Gabriele v. Am. Home Mortgage Servicing, Inc.*, 503 F. App'x 89, 94-96 (2d Cir. 2012) (collecting cases).

---

authority, the burden upon the Court is improperly increased. The onus is upon the parties to formulate arguments. Generally, a litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. The court will not do his research for him." *Perez v. Bureaus Inv. Grp. No. II, LLC*, Case No. 1:09-CV-20784, 2009 WL 1973476, at *2 n.3 (S.D. Fla. July 8, 2009) (Gold, J.) (internal quotations and citations omitted).

To be material, "a statement must influence a consumer's decision or ability to pay or challenge a debt." *Miljkovic*, 2014 WL 3587550, at *8. This materiality requirement limits liability under the FDCPA to "genuinely false or misleading statements that 'may frustrate a consumer's ability to intelligently choose his or her response.'" *Powell v. Palisades Acquisition XVI, LLC*, No. 14-1171, 2014 WL 7191354, at *6-7 (4th Cir. Dec. 18, 2014) (quoting *Donohue*, 592 F.3d at 1034); *see also Hahn*, 557 F.3d at 758 ("The statute is designed to provide information that helps consumers to choose intelligently, and by definition immaterial information neither contributes to that objective (if the statement is correct) nor undermines it (if the statement is incorrect)"). "Thus, only misstatements that are important in the sense that they could objectively affect the least sophisticated consumer's decisionmaking are actionable." *Powell*, 2014 WL 7191354, at *6-7; *see also Lox v. CDA, Ltd.*, 689 F.3d 818, 826-27 (7th Cir. 2012) (to be actionable under the FDCPA the false or misleading statement must have the ability to influence the consumer's decision); *Gabriele*, 503 F. App'x at 94-96 (statements that could "impede a consumer's ability to respond to or dispute collection, violate the FDCPA.").

Ordinarily, the mere mislabeling of amounts actually due does not constitute a false, deceptive or misleading representation for purposes of liability under § 1692e or § 1692f. *See Donohue*, 592 F.3d at 1033 (complaint did not violate FDCPA "just because $32.89, labeled as 12% interest on principal, was actually comprised of finance charges of $24.07 and post-assignment interest of $8.82, but not labeled as such."). This is because "false but non-material representations are not likely to mislead the least sophisticated consumer and therefore are not actionable under §§ 1692e or 1692f." *Id.*

(concluding that when the total owed was accurate, but the labels for the sums were technically incorrect, the communication was not actionable under the FDCPA); *see also Wahl*, 556 F.3d at 645-46 (rejecting plaintiff's hyper-technical argument that collection letter was false and violated the FDCPA because the principal sought included interest and didn't technically and accurately separate interest from the principal). "For example, where a demand letter misstates interest as principal but accurately states the total amount owed, such a technical error is not material." *Powell*, 2014 WL 7191354, at *6-7; *see also Hahn*, 557 F.3d at 757. As the Seventh Circuit has explained, regardless of label, "a dollar due is a dollar due. . . reporting interest in one line item rather than another (or in two line items) harms no one." *Hahn*, 557 F.3d at 757.

Accordingly, the Court rejects Plaintiff's argument that because the Collection Letter already listed costs in the amount of $6.03, the administrative fees "must be something else other than costs," and that viewed from the perspective of the least sophisticated consumer, "the listing of those $50 under a separate line entry would thus mislead such a consumer to conclude the contrary, *i.e.*, that they were **not** costs." (DE 33 at 2.) Viewed from the perspective of the least sophisticated consumer, Plaintiff has not shown how the labeling of those fees was incorrect, much less that the labeling was material or misleading. Nor has she asserted that her decision-making regarding the debt would have been affected had the $50.00 fees been labeled differently. Regardless of whether Defendant listed the disputed $50.00 as fees or costs, they were amounts expressly authorized by the agreement creating the debt and the inclusion of those fees in the Collection Letter was not unfair, misleading, or deceptive. Further,

13

there is no dispute that Plaintiff owed the $50.00. Consequently, the Court finds that the attempt to collect the $50.00 in administrative fees was not misleading or deceptive to the least sophisticated consumer.

The Court is reminded of Judge Glasser's observation in *Jacobson v. Healthcare Fin. Servs., Inc.*, 434 F. Supp. 2d 133, 138 (E.D.N.Y. 2006):

> Ironically, it appears that it is often the extremely sophisticated consumer who takes advantage of the civil liability scheme defined by [the FDCPA], not the individual who has been threatened or mislead. . . . It is interesting to contemplate the genesis of these suits. The hypothetical Mr. Least Sophisticated Consumer ("LSC") makes a $400 purchase. His debt remains unpaid and undisputed. He eventually receives a collection letter requesting payment of the debt which he rightfully owes. Mr. LSC, upon receiving a debt collection letter that contains some minute variation from the statute's requirements, immediately exclaims "This clearly runs afoul of the FDCPA!" and-rather than simply pay what he owes-repairs to his lawyer's office to vindicate a perceived "wrong." "[T]here comes a point where this Court should not be ignorant as judges of what we know as [people]." *Watts v. State of Ind.*, 338 U.S. 49, 52, 69 S.Ct. 1347, 93 L.Ed. 1801 (1949).

*Jacobson v. Healthcare Fin. Servs., Inc.*, 434 F. Supp. 2d 133, 138 (E.D.N.Y. 2006).

IV. **CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment (DE 10). Defendant shall file a Motion for Final Judgment and a Proposed Order of Final Judgment within 10 days of the date of this Order.

**DONE AND ORDERED** in chambers in Miami, Florida, this ___ day of January, 2015.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE